UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RYAN TERRELL PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-01681-SRC |
| | ) | |
| CENTURION et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum and Order**

In July 2025, the Court granted Patterson's application to proceed *in forma pauperis*, assessed an initial partial filing fee of $90.38, and ordered Patterson to pay that sum to the Clerk of Court no later than July 31, 2025. Doc. 44 at 3 (The Court cites to page numbers as assigned by CM/ECF.). In September 2025, the Court dismissed this case without prejudice for Patterson's failure to comply with the Court's July 1 Order. Docs. 63, 64. Patterson appealed. Doc. 66. The Eighth Circuit vacated the dismissal and remanded the case for further proceedings. Doc. 75 at 2–3; doc. 80. For the reasons set forth below, the Court waives the initial partial filing fee and dismisses this action under 28 U.S.C. § 1915(e)(2).

**I. Filing fee**

Consistent with the Eighth Circuit's holding, doc. 75 at 3, the Court finds that Patterson lacks the means to pay any fees associated with this action and waives the initial partial filing fee, *see* 28 U.S.C. § 1915(b)(4). Even so, Patterson must pay the full $405 filing fee over time. *See Ashley v. Dilworth*, 147 F.3d 715, 716 (8th Cir. 1998) ("The purpose of the Act was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period

of time."); *see also Koenig v. Missouri Dep't of Corr.*, No. 4:23-cv-01524-MTS, 2024 WL 277939, at *1 (E.D. Mo. Jan. 25, 2024) ("The Prison Litigation Reform Act . . . requires all inmates to pay filing fees.'") (quoting *Crawford-El v. Britton*, 523 U.S. 574, 596 (1998)). The Court therefore directs the agency having custody of Patterson to forward to the Clerk of Court monthly payments of 20 percent of the preceding month's income credited to Patterson's account each time the amount in the account exceeds $10, until the $405 filing fee is paid in full. *See* 28 U.S.C. § 1915(b)(2). The Court now turns to address Patterson's allegations on the merits.

## II. Factual background

In his second amended complaint, Patterson names Centurion Health and eleven individuals: Philip Tippen, T. Taylor, James Donald, Amy Courtney, Chada Ashokkumar, Unknown April, Unknown Cassidy, Debra Bacon, Unknown Humble, Unknown Espinza, and Unknown Sheldon. Doc. 32 at 2, 3–4. He sues all defendants in their official and individual capacities. *Id.* at 2–7.

Patterson alleges that Defendants denied him medical treatment for serious medical needs at three different facilities "[f]rom the time Centurion took over as medical provider for the Missouri Department of Correction[s] til [sic] the present." *Id.* at 4. He claims he suffered cardiac pain, extreme weight loss, anxiety, depression, post-traumatic-stress disorder, severe pain and discomfort, and loss of motor skills. *Id.*

Patterson neither identifies an underlying medical condition, nor describes what treatment he sought or when any defendant denied him care. *See* doc. 32. For nine of the eleven individual defendants—Donald, Courtney, Ashokkumar, April, Cassidy, Bacon, Humble, Espinza, and Sheldon—Patterson alleges that each directly participated in denying medical treatment for his serious medical needs. *Id.* at 5–7. Patterson adds that Donald was "grossly

negligent [in] inmate medical treatment." *Id.* at 5. For Centurion and Tippen, Patterson alleges that they established policies and customs "allowing or encouraging the illegal acts." *Id.* Patterson states that Centurion, Tippen, Courtney, and Ashokkumar were "grossly negligent in managing" employees. *Id.* at 5–6. Finally, Patterson alleges that Taylor "learned of the violation of [his] rights and failed to do anything to fix the situation[,] creating [a] custom allowing or encouraging the illegal acts." *Id.* at 6. Patterson seeks compensatory and punitive damages. *Id.* at 8.

## III. Standard

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." To sufficiently state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must demonstrate a plausible claim for relief, which requires more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

To determine whether a complaint states a plausible claim for relief, the Court must engage in "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In doing so, the Court must

"accept as true the facts alleged, but not legal conclusions." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

When reviewing a self-represented litigant's complaint under section 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984) (per curiam), and liberally construes the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). A "liberal construction" means that, if the Court can discern "the essence of an allegation," the "[C]ourt should construe the complaint in a way that permits" the Court to consider the claim within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Even so, self-represented plaintiffs must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). The Court need not assume unalleged facts. *Stone*, 364 F.3d at 914–15 (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff). Nor must it interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## IV. Discussion

The Court liberally construes Patterson's second amended complaint to assert (1) individual-capacity claims for deliberate indifference to a serious medical need under the Eighth Amendment against the individual defendants, and (2) a claim against Centurion, both directly and through official-capacity claims against the individual defendants.

### A. Individual-capacity claims

Section 1983 provides a private cause of action against a person who, acting under color of state law, deprives another of a constitutional or federal right. *West v. Atkins*, 487 U.S. 42, 48

(1988). A plaintiff must show each defendant's personal involvement in the alleged violation. *See White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017). To plead a plausible deliberate-indifference claim, Patterson must allege that: (1) he suffered from an objectively serious medical need, and (2) Defendants actually knew of but deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

For nine of the eleven individual defendants, Patterson offers the same conclusory assertion—that the defendant directly participated in denying medical treatment to serious medical needs. Doc. 32 at 5–7. But Patterson's exhibits contradict his claim. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999) (permitting district courts to consider exhibits attached to a complaint).

For example, Defendant Courtney explained to Patterson in an Informal Resolution Request Response that according to his "medical record[s,]" nurses evaluated Patterson's "complaint of chest pain." Doc. 32-2 at 1. Courtney stated that "[t]he nurses initiated the chest pain protocol which included giving [Patterson] medications, performing an EKG, and contacting the physician." *Id.* "The nurses[,]" Courtney stated, "followed the orders prescribed by the physician which included placing [Patterson] in the infirmary for observation." *Id.* And Patterson was "subsequently seen by the site provider and a workup was completed to determine the cause of [his] chest pain." *Id.* The results indicated that "the origin of [his] chest pain was gastric issues . . . . [N]o evidence [existed] that [Patterson was] diagnosed as having a heart attack." *Id.* Patterson's remaining exhibits show that he has received medical treatment for his complaints of chest pain. *Id.* at 2–13.

So even if the Court assumes that Patterson's complaints of chest pain constitute an objectively serious medical need, he has not plausibly alleged that Defendants knew of but

deliberately disregarded those needs. *Dulany*, 132 F.3d at 1239. Quite the opposite: the record shows that officials have been attentive to his complaints of chest pain. Doc. 32-2 at 2–13. Though Patterson may think that he has received insufficient medical care, he has no constitutional right to a particular course of medical treatment. *Dulany*, 132 F.3d at 1239 (citations omitted). Patterson's "mere disagreement with the course of [his] medical treatment fails to state a deliberate-indifference claim." *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004).

And as to Patterson's complaints of extreme weight loss, anxiety, depression, post-traumatic-stress disorder, severe pain and discomfort, and loss of motor skills, *see* doc. 32 at 4, Patterson doesn't allege specific conduct that violated his constitutional rights, *id.* These "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not state a plausible claim for relief. *Iqbal*, 556 U.S. at 678.

Next, Patterson alleges that Tippen, Courtney, and Ashokkumar were "grossly negligent in managing" staff, and that Taylor "learned of the violation of [his] rights and failed to do anything to fix the situation[.]" Doc. 32 at 5–7. But "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997); *see also Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). Patterson pleads no concrete facts tying any supervisory defendant to a specific constitutional deprivation. *See* doc. 32. Absent facts showing direct responsibility for the conduct, these allegations do not plausibly link Tippen, Courtney, Ashokkumar, or Taylor to a constitutional violation. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). The Court therefore dismisses Patterson's individual-capacity claims against all individual defendants under section 1915(e)(2)(B)(ii).

**B. Centurion and official-capacity claims**

Patterson also sues the individual defendants in their official capacities. The legal effect of an official-capacity claim depends on the defendant's employer, and Patterson does not specify an employer for each individual defendant. Regardless, his claims fail.

Courts treat official-capacity claims against state employees as claims against the state itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). But neither a state nor its officials acting in their official capacities are "persons" under section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). And the Eleventh Amendment bars such claims absent waiver or valid congressional abrogation of immunity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 743–44 (8th Cir. 1998). Patterson alleges no waiver or abrogation. *See* doc. 32. To the extent Patterson sues any individual defendant in his or her official capacity as an employee of the State of Missouri, the Court dismisses those claims.

To the extent the individual defendants work for Centurion, the Court treats Patterson's official-capacity claims against them as claims against Centurion itself. But section 1983 does not impose vicarious liability on a corporation solely based on its employees' actions. *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993). To state a plausible section 1983 claim against a private corporation, Patterson must allege that the corporation itself caused the constitutional violation through an official policy or custom. *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007).

Patterson alleges that Centurion "created a policy or custom allowing or encouraging the illegal acts." Doc. 32 at 5. Standing alone, Patterson's statement is a bare legal conclusion. Patterson does not identify the policy or custom, describe its content or origins, or allege facts suggesting a pattern of similar constitutional violations. *See id.* The allegation amounts to

nothing more than a "[t]hreadbare recit[al] of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The Court therefore dismisses Patterson's claims against Centurion and his official-capacity claims against the individual defendants under section 1915(e)(2)(B)(ii).

**V. Remaining motions**

Finally, Patterson's motion for change of judge lacks merit. *See* doc. 78. The Court construes this liberally as a motion for recusal, as the Missouri change-of-judge statutes on which he relies simply have no application here. *See* doc. 78 at 1 (citing Mo. Rev. Stat. § 508.090 and a repealed state statute). Still, Patterson identifies no basis for recusal under 28 U.S.C. §§ 144, 455, other than the frivolous argument that the Court has a "liberal interest in [him] failing this case." Doc. 78 at 1. But dissatisfaction with the Court's prior ruling does not suffice as a basis for recusal. *See Johnson v. Steele*, 999 F.3d 584, 588 (8th Cir. 2021) ("Unfavorable judicial rulings are not sufficient to require disqualification absent a showing of pervasive personal bias and prejudice.") (citation modified); *see also Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 665 (8th Cir. 2003) ("An adverse ruling does not constitute a sufficient basis for disqualification without a clear showing of bias or partiality."). The Court therefore denies Patterson's motion for change of judge. Doc. 78. And because the Court dismisses this action under section 1915(e)(2), the Court denies as moot Patterson's motion for appointment of counsel, doc. 77, and request for production of documents, doc. 79.

**VI. Conclusion**

Accordingly, the Court waives the initial partial filing fee and directs the Clerk of Court to request that the agency having custody of Patterson forward payments from his inmate account to the Court each time the amount in the account exceeds $10, until the $405 filing fee is

paid in full. *See* 28 U.S.C. § 1915(b)(2). The Court denies Patterson's [78] motion for change of judge. The Court denies as moot Patterson's [77] motion to appoint counsel and [79] request for production of documents. The Court dismisses this case without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). A separate order of dismissal accompanies this Memorandum and Order.

So ordered this 25th day of August 2026.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE